FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 MAY 25  PM 2: 54

LORETTA G. WHYTE
CLERK

# IN THE UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MARCO OUTDOOR ADVERTISING, INC., **PLAINTIFF** | * * * * | CIVIL ACTION NO. **05-1941** |
| versus | * * | SECTION **SECT. C MAG. 2** |
| THE REGIONAL TRANSIT AUTHORITY, **DEFENDANT** | * * * | |

*************************************************************************

### PLAINTIFF'S ORIGINAL COMPLAINT AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

This action is brought by Plaintiff, Marco Outdoor Advertising, Inc. ("Marco"), who has been deprived of its property interest, as the highest responsible bidder in a public contract by the Regional Transit Authority ("RTA") in contravention of the Fourteenth Amendment of the United States Constitution, made actionable under 42 U.S.C. § 1983, and in violation of Louisiana's Public Bid Law, La. R.S. 38:2211 et seq. In support thereof, Marco avers as follows:

### I.    PARTIES

1. Marco is a Louisiana Corporation with its domicile and principal place of business in New Orleans, Louisiana.

2. The RTA is a body politic and corporate, and political subdivision of the State of Louisiana, and may be served with process through James Reiss, its President and the Chairman of its Board of Commissioners, pursuant to

Fee  250.
Process_____
X  Dktd_____
__ CtRmDep____
__ Doc. No._____

Federal Rule of Procedure 4(j)(2) and 28 U.S.C. § 1608. Service may be made at 6700 Plaza Drive, New Orleans, Louisiana 70127. Prior to the filing, Marco hand delivered a copy of this Complaint to the RTA.

## II.  JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 since the matter in controversy arises under the Constitution and laws of the United States. This Court has subject matter over this Complaint's supplemental state law claim pursuant to 28 U.S.C. § 1367(a). Such claim is so interrelated to the federal claim in this action that it is to be considered part of the same case or controversy under Article III of the United States Constitution.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) since the Defendant's domicile is and its principal place of business is located in, New Orleans, Louisiana, and since all of the events giving rise to Plaintiff's claims occurred in this judicial district.

## III.  STATEMENT OF FACTS AND LAW

5. On or about August 1, 2004, the RTA solicited "sealed proposals" from prospective bidders for the furnishing of advertising on RTA's transit vehicles. The responses to this solicitation were originally due on September 30, 2004. A copy of this solicitation is attached hereto and marked as Marco Exhibit 1.

6. This solicitation was for "Marketing Advertising space on RTA's Vehicles, Transit Shelters and Transit Benches." (Marco Exhibit 1) The bidders were to "...provide a straight forward, concise delineation of the proposer's capability to satisfy the requirements of the Request for Proposal. (Marco Exhibit 1, Section 1.1) The RTA has attempted to camouflage its bidding process as a "Request for Proposal" instead of a public bid in order to circumvent the Public Bid Laws of the State of Louisiana. See *World Wide Parking, Inc. vs. New Orleans City*, 132 Fed.Appx. 606, 2005 375945 (5th Cir. 2005). The "proposals," however, were to be submitted in sealed envelopes.

7. The solicitation provided that a contract would be entered into between the RTA and successful bidder. (Marco Exhibit 1, Section 1.4) It further states, in section 1.12, that the proposals will be "...evaluated according to the evaluation criteria provided in this Request for Proposals." (Marco Exhibit 1, Section 1.12) Section 1.14 of the solicitation also requires that the proposal "....shall include all labor, materials, tools, and equipment and other costs necessary to fully complete the scope of services pursuant to the <u>specifications</u> provided herein." (Marco Exhibit 1, Section 1.14) The solicitation continuously refers to the "contract" and the contractor. In Section 2.10 the solicitation states, "The contractor shall perform all <u>work</u> diligently, carefully and in a good and workman-like manner and

3

shall furnish all labor, supervision, <u>machinery</u>, <u>equipment</u>, <u>material</u> and supplies necessary therefore." (Marco Exhibit 1, Section 2.10)

8. In general section 3.1 outlines sparse requirements for a response. (Marco Exhibit 1, Sections 3.1; I, II, III, IV) Section 3.2 lists only the order of importance of the "Evaluation Criteria." No breakdown of relative importance is provided. Thereafter the solicitation states that there are ***no*** "DBE" (Disadvantaged Business Enterprise) goals established for this "project."

9. In short, the solicitation by this State entity was for the exclusive right to market advertising space on RTA's streetcars and buses. The proposal called for a minimum guaranteed payment of 52% of total net revenue. It further required, as a condition to bid, that each bidder provide to RTA $50,000 annually for "Contractor media (billboards)" and an annual $25,000 "Bartered" print or broadcast media for use by RTA. Finally, the contractor was required to provide $75,000 annually for marketing analysis. None of the three (3) foregoing monetary requirements were provided as bid items. Nowhere in the solicitation does it mention that a bid will be favorably evaluated if it submits higher figures for these requirements.

10. Six national advertising concerns submitted bids in response to this solicitation: The bidders and their bids were (originally) as follows:

4

| Bidder | Percentage Guarantee | Dollar Guarantee |
|---|---|---|
| 1. Marco | 60% | 13,550,000 |
| 2. Clear Channel | 52% | 9,846,000 |
| 3. Galeway | 55% | 7,700,000 |
| 4. Titan | 53% | 11,225,000 |
| 5. Mearu | 53.1% | 8,806,000 |
| 6. Lamar | 52% | 6,850,000 |

(Marco Exhibit 2, taken from the files of the RTA pursuant to a public records request)

> Clearly by all objective criteria, Marco submitted the bid with the highest return to the RTA both in minimum / total monetary amount and in percentage split of revenues.

11. Despite the contents of these bids the RTA chose to subjectively evaluate the proposals by a weighted formula previously unknown to all bidders. Five employees of RTA subjectively evaluated the six (6) bids and randomly assigned "points" to each bidder. The evaluations were random because no uniform standard or criteria were furnished to the evaluators. They were free to choose points at their whim. For an example of this subjectivity, one of the "criteria" categories was "Anticipated Revenues to RTA (60 points)." It is absurd to allow subjective evaluation of an objective finite number with numerical analysis. Some bidders were awarded 10 out of 60 for their dollar bid while another evaluation awarded

5

the same bidder 50 out of 60 for the same bid. The evaluations were similarly bizarre in all respects. They did not evaluate compliance with specifications.

12. Despite having announced to the bidders that DBE participation goals had not been established, the evaluators gave "bonus" points to certain bidders and none to others, including Marco.

13. Disregarding the objective evaluation that Marco's bid was thirty-six (36%) percent higher than its next competitor, the RTA staff made a decision to "negotiate" with only one bidder, Clear Channel Communications. Clear Channel, Inc. was allowed to resubmit a "Best and Final offer" to the RTA. (Interestingly, Clear Channel, Inc. had not complied with the after-the-fact DBE requirements until it was allowed to submit a later proposal. It was then given bonus points in the maximum amount even though one staffer pointed out Clear Channel's complete non-compliance (Marco Exhibit 3) This "Best and Final Offer" (Marco Exhibit 4) allowed it to raise its minimum guarantee from $9,846,000 to $10,186,000. However, the RTA gave additional credit to Clear Channel, Inc. for its agreement to comply with the non-monetary requirements. They were given an additional $1,500,000 for Bartered and Bonus Advertising and $1,700,000 for "Marketing and Demographics" value. RTA allowed Clear Channel, Inc. to raise these amounts when no one had previously been told that this would be an evaluation criteria. Lastly, Clear Channel, Inc. was able to add speculative percentage revenues to its

6

"bid" in the amount of $3,623,000 in violation of the solicitation. According to the RTA staff, the former bid of $9,846,000 all of a sudden magically became a $17,009,000 bid.

14. The RTA is scheduled to award this advertising contract to Clear Channel, Inc. despite the superior bid of Marco. (Marco Exhibits 5 and 6)  See also the email of the Chairman of RTA to its Director wherein he states, "Marco has the highest revenue and the highest percentage of sharing. Why do they score so low?" (Marco Exhibit 7)

15. The RTA is a state agency and pursuant to its enabling legislation, La. R.S. 48:1651 et seq. is unequivocally bound by the Louisiana Public Bid Law in all of its procurement policies.  Specifically, La. R.S. 48:1660 provides:

> **§1660. Competitive bidding on contracts, etc.**
>
> By way of illustration and not specification, **_all_** purchases, acquisitions, dispositions, **_contracts_**, lease, bond sales, and like actions of the authority referred to in the provisions of this Chapter **_shall be subject to the public bid laws_** of this state. *(Emphasis Added)*
> La.R.S. 48:1660 (West 2005)

See also *Nolan Contracting, Inc. vs. Regional Transit Authority*, 651 F.Supp 23 (U.S.D.C. EDLA 1986)

16. All contracts that the RTA has the authority to enter into are governed by the Public Bid Laws of the State of Louisiana.  The Public Bid Law of the State requires that the award of this type of contract be by open competitive bidding.  A contract for the sale of advertising space is not one that can be excluded from public bid since it is one that neither for

professional nor personal service. *Id. Transportation Displays, Inc. vs. City of New Orleans,* 346 So.2d 359 (La. App. 4th Cir. 1977). It is a matter where evaluation of the competitors must be made on a quantitative objective basis.

17. The contract at issue, for leasing and sale of bus advertising on RTA's vehicles, is not solely a contract for service, but rather one for the exclusive use of physical space on these vehicles. The Louisiana Legislature mandated that all purchases, acquisitions, **_contracts_**, leases, board sales and the like actions . . . **_shall_** be subject to the Public Bid Laws of this State. La. R.S. 48:1660 and *Nolan Contracting, Inc. vs. Regional Transit Authority,* 651 F.Supp 23 at 27 (EDLA 1986) Here, the Legislature required that **_all_** of the enumerated actions and acquisitions of the RTA would require compliance with the formal procedures of the Public Bid Laws, beyond those public works, materials and supplies that are traditionally covered by the law, such as construction projects. However, the Public Bid Law has always encompassed the purchase of materials and supplies. La. R.S. 38:2212.1.

18. The RTA violated the due process rights of Marco under the United States Constitution and under the Constitution of the State of Louisiana by not adhering to the Public Bid Laws of the State of Louisiana.

19. The use of the Request for Proposal Process as a ruse to circumvent a required open competitive bidding process should not be condoned since it would allow the RTA to circumvent the "requirements of the Public Bid

Law" . . . simply by characterizing a solicitation as a Request for Proposal. *Worldwide Parking, Inc. vs. City of New Orleans,* 123 Fed. Appx. 606, 2005 WL 375 945 (5th Cir. 2005).

20. The constitutional right of Marco, i.e. the right to be awarded this contract, has been violated by the RTA, which engaged in a sham to award the contract to a bidder who submitted an inferior bid. Marco has a vested property right as the highest bidder to enforce its claims for violation of the Public Bid Laws. *Worldwide Parking, Inc. vs. City of New Orleans,* 123 Fed. Appx. 606, 2005 WL 375 945 (5th Cir. 2005); *Nolan Contracting, Inc. vs. Regional Transit Authority,* 651 F. Supp. 23, 26 (EDLA 1986); *Williams vs. Board of Supervisors,* 388 So.2d 438, 441 (La. Ct. App. 1980); *Haughton Elevator Division vs. State Division of Administration,* 367 So.2d 1161, 1164 (La. 1979).

21. The Public Bid Laws of Louisiana were enacted for the purpose of preventing favoritism and exorbitant pricing in the award of public contracts, and for the overall benefit of the taxpayers. In awarding a contract subject to Public Bid Law, a governmental authority is held to a constitutional requirement that, in the exercise of its discretion it may not act unfairly, arbitrarily, or irrationally in the award of a public contract. *Haughton Elevator Division vs. State Division of Administration,* 367 So.2d 1161 (La. 1979) All of the actions of RTA in awarding this contract to an inferior bidder are unfair, arbitrary, and irrational.

22. Marco adhered to all of the specifications of the original solicitation and submitted the highest revenue guarantee and percentage of revenue to the RTA. Once a bidder is in compliance with the specifications and submits the best quantitative bid, it must be awarded the contract. Marco timely complied with all specifications and timely submitted its bid, which was the best quantitative bid, to the RTA.

23. The RTA's staff's of the subjective scoring process in evaluating these bids is in violation of the Public Bid Laws of the State of Louisiana.

24. Unless enjoined by this Court, the RTA intends to award the contract at issue to the inferior bidder, Clear Channel, Inc., at its Board meeting on Thursday, May 26, 2005. (See email of the Chairman of the RTA, James Reiss, dated May 24, 2005, attached hereto as Marco Exhibit 5)

25. The RTA violated 42 U.S.C. § 1983 and Louisiana law by failing to award Marco the contract at issue despite the fact that it was qualified in all respects and submitted the superior bid. Its bid complied with all of the RTA's solicitation requirements.

26. There is no legal authority for the RTA to award this contract to Clear Channel, Inc. If all bidders are in compliance with the specifications, the award may only be based on a quantitative analysis of the bids. A contracting authority in Louisiana may not reserve unto itself the unfettered ability to award a display advertising contract to whomever it chooses.

27. Unless this Court enters an order enjoining the award of this contract, Marco may lose all rights to redress the wrongs complained of herein.

28. Alternatively, to the extent that any of the foregoing claims and allegations constitute State causes of action, Marco requests that this Court exercise supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367 because any state claims it may have are so related to the Federal claims over which this Court has jurisdiction that they form part of the same case or controversy.

## *FIRST CAUSE OF ACTION*

Marco is entitled to immediate injunctive relief, without a showing of irreparable harm and without the necessity of providing security, enjoining the RTA from awarding the contract at issue to Clear Channel, Inc. or any other bidder except Marco. Although not required, Marco avers that it will suffer immediate and irreparable harm if the RTA is not enjoined, by a Temporary Restraining Order and, in due course, a Preliminary and Permanent Injunction, from awarding this contract to Clear Channel, Inc. Marco may not have an adequate remedy at law. *Anne Lind and Associates vs. Orleans Private Industry Council,* 98-CA-0848 (La. App. 4th Cir. 2/3/99), 729 So.2d 1067; *Airline Construction Company vs. Ascension Parish School Board,* 568 So.2d 1029 (La. App. 4th Cir. 1990).

## *SECOND CAUSE OF ACTION*

Since Marco's bid was in compliance with the specifications, and since Marco is a qualified bidder that was not disqualified by the RTA, it must be awarded this contract.

The award of a contract by a public body, such as that at issue herein, is a purely ministerial duty, and, as such, the RTA should be ordered, by way of a Writ of Mandamus, to award this contract to Marco.

### THIRD CAUSE OF ACTION

Alternatively, Marco seeks a declaratory judgment against the RTA declaring its award of this contract to Clear Channel, Inc. void, null, and of no effect.

**WHEREFORE,** Plaintiff, Marco Outdoor Advertising, Inc., prays as follows:

1. That this Court issue a Temporary Restraining Order, a Preliminary Injunction, and, in due course, a Permanent Injunction restraining and prohibiting the Regional Transit Authority, its agents, employees, or any others acting in concert with it, from taking any action or steps to award the advertising contract for its vehicles to Clear Channel, Inc. or any other bidder other than Marco.

2. That this Court, in due course, issue an Order, or Writ of Mandamus, directed to the Board of the Regional Transit Authority and its President, and all others acting in concert with it, directing it to award the advertising contract for the Regional Transit Authority vehicles, 2004-015, to Marco Outdoor Advertising, Inc.

3. That this Court declare, pursuant to 42 U.S.C. § 1983, that Marco was the highest and best responsive and responsible bidder for this public contract, and that by its actions, the Regional Transit Authority has denied, without due process, the property rights of Marco as protected

by the Fifth and Fourteenth Amendments to the Constitution of the United States of America and the State of Louisiana.

4. That this Court award all applicable attorney's fees and damages as provided by law.

5. Such other relief as is just and proper, including equitable relief, if appropriate, and all costs of these proceedings.

                            RESPECTFULLY SUBMITTED:

                            KINNEY & ELLINGHAUSEN

BY: _____
      HENRY W. KINNEY (#7410)
      TARA E. CLEMENT (#27406)
      KRYSTENA L. HARPER (#27494)
1250 Poydras Street, Suite 2450
New Orleans, Louisiana 70113
Telephone: (504) 524-0206
Attorneys for Plaintiff,
    Marco Outdoor Advertising, Inc.

### CERTIFICATE OF SERVICE

*I HEREBY CERTIFY* that on this 25 day of May, 2005, a copy of the above and foregoing has been hand delivered to the Defendant.

_____

13

## VERIFICATION

**STATE OF LOUISIANA**

**PARISH OF ORLEANS**

      **BEFORE ME** the undersigned notary, personally came and appeared:

**HENRY W. KINNEY**

who did depose and say that:

    1.    He is an attorney of record for Plaintiff herein, Marco Outdoor Advertising, Inc.;

    2.    The allegations of Plaintiff's Original Complaint and Application for Temporary Restraining Order and Preliminary Injunction are correct and accurate to the best of his knowledge, information and belief;

    3.    A copy has been delivered via hand delivery or the United States Mail, postage prepaid and properly addressed, to the following parties:

      Regional Transit Authority
      6700 Plaza Drive
      New Orleans, Louisiana 70127

                            _____
                                HENRY W. KINNEY

**SWORN TO AND SUBSCRIBED
BEFORE ME, NOTARY, THIS
25 DAY OF MAY, 2005.**

_____
NOTARY PUBLIC
KRYSTENA L. HARPER (27494)
*My Commission is for life.*

# AFFIDAVIT

STATE OF LOUISIANA
PARISH OF ORLEANS

      **BEFORE ME,** the undersigned authority, personally came and appeared,

## MARC WINSTON

who, after being duly sworn, did depose and state that:

1. He is personally knowledgeable and familiar with all of the facts alleged herein and makes this affidavit of his own personal knowledge;

2. He is a resident of and domiciled in this Parish and State, at 1700 Arabella Street;

3. Marco Outdoor Advertising, Inc. (MARCO) is a Louisiana Corporation organized by affiant in 1987. Affiant is the sole stockholder of MARCO;

4. MARCO is a general display advertising company and is the second largest billboard company in the greater New Orleans area. It has annual sales of three million dollars ($3,000,000.00);

5. Affiant has been engaged in the display advertising business since 1969 when he became employed by the Winston Network, Inc., which was awarded the display advertising contract with New Orleans Public Service for the busses and streetcars operated in the City of New Orleans;

6. Winston Network, Inc. was a company started by Affiant's father, Irwin Winston. Winston Network, Inc. acquired and merged into a national concern named Transportation Displays Incorporated. (TDI);

7. Affiant became the Chief Executive Officer of TDI. TDI is the predecessor to Clear Channel, Inc. in the New Orleans transit advertising contract;

8. The local manager of Clear Channel, and the person identified in its bid as its local contact, Tim Fenasci was originally hired by Winston Network/TDI in 1985;

9. Affiant and his family were the controlling shareholders of TDI when it was sold in 1986;

10. At the time of the sale of TDI it operated transit advertising contracts in at least 50 major United States metropolitan markets including the cities of New York, Chicago, San Francisco, and New Orleans;

11. Affiant has been engaged in display advertising all of his adult life and supervised and was responsible for the transit advertising contracts of TDI;

12. It is the custom and practice for a governmental authority such as the Regional Transit Authority ("RTA"), which operates a transit fleet, to openly and competively place for bid the contract for transit display advertising;

13. On or about August 1, 2004, MARCO timely submitted a bid in response to the RTA's solicitation for the advertising contract for RTA's vehicles, MARCO's bid was in full compliance with all of the specifications for;

14. MARCO's bid guaranteed to the RTA that MARCO would pay it the sum of $13,550,000.00 over a ten year period. It also agreed to pay the RTA the sum of 60% of its gross revenues as defined in the specifications;

15. Affiant received bid documents for all bidders from the RTA. MARCO's bid of $13,550,00.00 was $3,704,000.00 higher than the bid of Clear Channel, Inc., or 36% greater. MARCO's percentage bid of 60% was 8% higher than the bid of Clear Channel, Inc., or 15% greater;

16. Affiant states that MARCO was in compliance with all non monetary provisions of the specifications;

17. Affiant states that MARCO was told that no DBE goals were established for this contract;

18. Affiant states that the bid of MARCO was superior in every category monetarily to all other bids and complied with all specifications;

19. MARCO will suffer irreparable harm if the RTA awards its display advertising contract for its vehicles to Clear Channel, Inc. since MARCO may not have any other redress for the wrongful award of this contract;

20. MARCO has never been notified by RTA that its bid was in any way not in compliance with the specifications promulgated for the transit display advertising contract.

21. MARCO has not been disqualified by the RTA from this contract procurement process;

22. MARCO is profitable and well able to comply with all of the financial provisions of the proposed contract;

23. MARCO's employees are experienced in the sale of advertising as required by the specifications and are well able to carry out performance of the contract;

24. RTA allowed Clear Channel, Inc. to submit a second bid and did not allow any other bidders this opportunity;

25. RTA erroneously calculated the bid of Clear Channel, Inc. RTA did not compare MARCO's minimum guarantee directly with the minimum guarantee of Clear Channel, Inc. nor directly compare percentage guarantees.

26. All bidders were required to furnish the RTA with a specified amount of Bartered and Bonus advertising and marketing demographics values. No bidder was ever informed that it could increase these specified amount to increase its "score";

27. The total financial commitment of Clear Channel, Inc. made in its bid to the RTA was $9,846,000.00. MARCO's guarantee was $13,550,000.00;

28. The evaluators were not given any written direction or objective basis for them to complete the analysis of the bids.

**Dated this** \_\_\_\_25th\_\_\_\_ **day of May, 2005**

_____
MARC WINSTON

**SWORN TO AND SUBSCRIBED
BEFORE ME, NOTARY, THIS** 25
**DAY OF MAY, 2005.**

_____
NOTARY PUBLIC

**Exhibit A: Bid of MARCO Outdoor Advertising**

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **MARCO OUTDOOR** | * | |
| **ADVERTISING, INC.,** | * | |
| **PLAINTIFF** | * | CIVIL ACTION NO. **05-1941** |
| | * | |
| versus | * | |
| | * | SECTION _____ |
| **THE REGIONAL TRANSIT** | * | **SECT. C MAG. 2** |
| **AUTHORITY,** | * | |
| **DEFENDANT** | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### *ORDER*

Considering the Plaintiff's, Marco Outdoor Advertising, Inc.'s, Original Verified Complaint and Application for Temporary Restraining Order and Preliminary Injunction, and considering the Affidavit of Mr. Marc Winston,

**IT IS HEREBY ORDERED THAT**, a Temporary Restraining Order be issued that restrains and prohibits the Regional Transit Authority, its agents, employees, or any others acting in concert or participation with it, from taking any action or steps to award the advertising contract for its vehicles, which proposals were submitted to the Regional Transit Authority under Request for Proposals No. 2004-015, to Clear Channel, Inc. or any other individual or company.

*NEW ORLEANS, LOUISIANA*, this ____ day of May, 2005.

FILE UNSIGNED —
See order

_____
**UNITED STATES DISTRICT JUDGE**

Fee _____
Process _____
Dktd _____
CtRmDep _____
Doc. No. _____

# SEE RECORD FOR EXHIBITS OR ATTACHMENTS NOT SCANNED