FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 JUN -2 AM 11: 15

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARCO OUTDOOR ADVERTISING, INC., **PLAINTIFF** | CIVIL ACTION NO. 05-1941 |
| | SECTION "C" |
| VERSUS | JUDGE: HELEN G. BERRIGAN |
| THE REGIONAL TRANSIT AUTHORITY, **DEFENDANT** | MAGISTRATE-2 |

### MOTION TO DISMISS and OPPOSITION TO PLAINTIFF'S ORIGINAL COMPLAINT AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

**NOW INTO COURT,** through undersigned counsel, comes the REGIONAL TRANSIT AUTHORITY (hereinafter referred to as "RTA") who respectfully requests that this Honorable Court grants this Motion to Dismiss for the reasons more fully explained in the attached memorandum.

Respectfully submitted,

**Carter, Haley & McKee, L.L.C.**

_____
N. Sundiata Haley (#26317)
James J. Carter (#26841)
Randy G. McKee (#24552)
Carter, Haley & McKee, L.L.C.
650 Poydras Street, Suite 2015
New Orleans, LA 70130
Telephone: 504.525.6836
Facsimile: 504.525.7289

Attorneys for the Regional Transit Authority

___ Fee_____
___ Process_____
_X_ Dktd_____
_✓_ CtRmDep_____
___ Doc. No._____

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing to all known counsel of record, via facsimile and United States Mail, postage prepaid, on this 1st day of June, 2005.

_____
N. Sundiata Haley

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARCO OUTDOOR ADVERTISING, INC., PLAINTIFF | CIVIL ACTION NO. 05-1941 |
| | SECTION "C" |
| VERSUS | JUDGE: HELEN G. BERRIGAN |
| THE REGIONAL TRANSIT AUTHORITY, DEFENDANT | MAGISTRATE-2 |

*Support*

## MEMORANDUM IN OPPOSITION TO PLAINTIFF'S ORIGINAL COMPLAINT AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

**MAY IT PLEASE THE COURT**:

The Regional Transit Authority Board ("RTA"), respectfully submits this memorandum in Opposition to Marco's Complaint, Motion for a Temporary Restraining Order and Motion for a Preliminary Injunction. Plaintiff has not and cannot identify a legitimate property interest under Louisiana Public Bid Law warranting a constitutional claim. Therefore, Plaintiff fails to state a claim upon which the Court may grant it relief and the Court must dismiss the Complaint as a matter of law.

1

## INTRODUCTION

Plaintiff filed this suit against the Regional Transit Authority ("RTA") requesting the Court to intrude upon the orders of municipal administrative agencies, reinterpret state law, and (in effect) prevent the RTA's from entering into an agreement with Clear Channel to provide the RTA with a Marketing Strategy for Advertising Space on RTA's Transit Fleet. ("Contract"). Plaintiff also requests the Court to cause the RTA to re-award the Contract to Plaintiff, despite the RTA having determined that Clear Channel would bring the most revenue to the RTA. Simply stated, the Contract does not fall within the parameters of the Louisiana Public Bid Law; and thus, Plaintiff has no legitimate property interest and fails to state a claim under 42 U.S.C. § 1983. Plaintiff should not be allowed to circumvent the RTA's valid proposal process merely because Plaintiff was unsuccessful. Plaintiff's disingenuous challenge is nothing more than an ill-conceived attempt to force the RTA to award it the contract.

## FACTUAL BACKGROUND

On August 6, 2004, the RTA initiated a Request for Proposals ("RFP") to provide professional services for Marketing Advertising Space on RTA's Vehicles, Transit Shelters and Transit Benches. *(See Exhibit "A" attached hereto and made a part hereof).* The RTA sought to contract for, *inter alia,* the following professional services: (1) development and implementation of a marketing strategy for advertising on the RTA's Transit Fleet; (2) development and implementation of a plan to assist with the promotion of rider ship; (3) conduct rider ship market analysis; (4) establish computer terminals containing the aforementioned marketing strategy and analysis and provide RTA with access to same; (5) establish databases containing the aforementioned marketing strategy and analysis and provide RTA with access to same; (6) conduct surveys in developing and implementing a marketing strategy for advertising on the RTA's Transit Fleet; (7) conduct demographic studies in developing and implementing a marketing strategy for advertising on the RTA's Transit Fleet; (8) conduct

2

demonstration projects in developing and implementing a marketing strategy for advertising on the RTA's Transit Fleet; and (9) and install and maintain all equipment necessary to develop and implement a marketing strategy for advertising on the RTA's Transit Fleet. Clear Channel, Marco, Titan, Meara, Gateway and Lamar responded to the RTA's RFP. All responsive RFPs were evaluated by the RTA according to precise criteria the RTA identified in the RFP. (*See Exhibit "A" at Section III*). Among other things, the RTA utilized a 100 points scoring system to evaluate the RFP responses, an additional 10 bonus points was awarded for Disadvantaged Business Enterprise participation. The Director of Procurement, Gene Wulfekuhler, recommended that the RTA Board of Commisioners approve the granting of the contract to Clear Channel pursuant to the terms of the RFP.

On May 25, 2005, Plaintiff filed the Complaint seeking to enjoin the RTA from awarding the contract to Clear Channel. The Complaint also seeks the extraordinary *writ* of mandamus ordering the RTA to award the Contract to Plaintiff, to the detriment of RTA and Clear Channel. Plaintiff is attempting to circumvent the RTA's authority to select the most qualified provider of professional services, which includes the entity that can furnish the RTA with the requisite services, including the best revenue return for the RTA. Because the RTA's Contract is for professional services, Plaintiff has no legitimate property interest under state law and therefore fails to state a claim upon which relief may be granted as a matter of law. Based upon those governing authorities, Plaintiff's request for injunctive relief must be denied and its Complaint must be dismissed as a rule of law.

## LEGAL ANALYSIS

Under Rule 12(b)(6) of the Federal rules of Civil Procedure, the Court must dismiss the complaint because it fails to state a claim upon which relief can be granted. When considering a motion to dismiss, the Court should view all material allegations in the Complaint as true. *See In re Mastercard Int'l Inc.*, 313 F.3d 257, 261 (5th Cir. 2002). However, "conclusory allegations or legal

3

conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Id. at 261. Plaintiff's attempt to distort the RTA's RFP for professional services as a matter that should be governed by the Louisiana Public Bid Law lacks merit and relies upon a series of convoluted arguments. Indeed, the RTA's RFP seeks a contract for professional services; the scope of services sought by the RTA is not a "public work" as contemplated under the Louisiana Public Bid Law. Consequently, it is legally permissible for the RTA to award the contract to the most qualified respondent.

In conjunction with the denial of Plaintiff's motion for a preliminary injunction, the RTA respectfully asserts that the Court should review this matter pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See, e.g., Priority E.M.S., Inc. v St. Bernard Parish Policy Jury*, 1992 Wl 59446 (E.D. La.).

## I. Plaintiff Does Not Have a Valid Property Right Under 42 U.S.C. §1983.

### A.  *The August 6, 2004 RFP does not involve a "public work"*

Plaintiff claims that its Fourteenth Amendment due process rights were violated because Plaintiff was denied the right to provide professional services i.e. marketing services. Plaintiff argues it was somehow deprived of a property interest. Plaintiff is wrong. Property interests are not created by the Constitution. *See Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)(citations omitted). Rather, property interests are created and their dimensions defined by rules that stem from an independent source, such as state law. *Id.*

In claiming that it was deprived of a property right, Plaintiff seeks to rely singularly upon Louisiana Public Bid Law. La. R. S. 38:2181 et. Seq. Title 38, Section 2212A(1)(a) provides that:

> All public work exceeding the contract limit, as defined in this Section, including labor and material, to be done by a public entity shall be advertised and let by contract to the lowest responsible bidder who had bid according to the contract, plans, and

4

specifications as advertised, and no such public works shall be done except as provided in this Part.

La. R.S. 38:2212(1)(a). The requirements of Louisiana's Public Bid Law apply to contracts by public entities for "public works" and purchases of "materials or supplies." *Id.; see also*, La. R.S. 38:2212.1. "Public works" are defined as the "erection, construction, alteration, improvement, or repair of any public facility or immovable property owned, used, or leased by a public entity." La. R.S. 38:2211(A)(12). The Louisiana Supreme Court has narrowly defined the phrase "public works" to include "a building, physical improvement, or other fixed construction" *Wallace Stevens, Inc. v. Lafourche Parish Hosp. dist. No. 3*, 323 So.2d 794, 796 (La. 1975)(holding that "public utility service contracts are not within the intendment of statutory bid requirements"). In other words, the RTA's RFP does not fall within the Public Bid Law; as a result, the Plaintiff's claims are legally defective.

Equally as important, and warranting denial of Plaintiffs motion for injunctive relief, the Louisiana Attorney General has determined that contracts for professional services are excluded from the Louisiana Public Bid Law. *See* Op. Aty. Gen., No. 89-276, June 16, 1989. Thus, for Plaintiff to state a cognizable cause of action under 42 U.S. C. § 1983, the RFP must seek a contact for "public works" under the Louisiana Public Bid Law. It does not.

Furthermore, in addition to the state's Public Bid Law, the RTA's enabling legislation provides, in pertinent part, as follows:

> The award of any contract for construction, alterations, supplies, equipment, repairs, maintenance, or services other than **professional services**, or for the purchase, sale, or lease of any property required by the terms of R.S. 38:2211 *et seq* to be advertised and let by contract to the lowest responsible bidder who had bid according to the advertised specifications.

LA R.S. 48:1655(K)(3)(emphasis added). As the Supreme Court opined, the determination as to whether a contract is for "public works," purchases of "materials or supplies" or "professional services"

is determined by the terms of the contract. *See New Orleans Rosenbush Claims Service, Inc. v. City of New Orleans*, 94-2223, 653 So.2d 538 (La. 4/10/95).

In short, the professional services described in the RTA's RFP are neither "public works" nor do they comprise the purchase of "materials and supplies." It is well-settled that Louisiana courts distinguish and excluded certain alterations, improvements and repairs to immovable property from the definition of "public works." For example, in *Tiger Air & Heat, LLC v. Jefferson Parish School Board*, 02-610, 832 So. 2d 324, 326 (La. App. 5th Cir. F10/16/02), the Court concluded that a contract for the operation, maintenance, service and repair of the HVAC systems in several Jefferson Parish schools was **not** subject to the Public Bid Law, despite the contractor being required to furnish equipment and materials necessary to maintain and repair the HVAC systems. *Tiger Air*, 832 So.2d at 326. The Court determined that the contractor, and not the School board, would be purchasing the equipment and materials necessary to provide the services under the contract. *Id.* Therefore, the contract was not for a "public work" which, the Court noted, has been interpreted by the Louisiana Supreme Court to mean "contracts for building, physical improvements and other fixed construction." Id. At 327 (citing *Wallace Stevens, Inc. v. Lafourche Parish Hospital Dist. No. 3*, 323 So. 2d 794 (La. 1975)).

Similarly, in *Haynes v. Recreation and Park Commission of the Parish of East Baton Rouge*, 411 So. 2d 495, 497 (La. App. 1st Cir. 1982), the Court concluded that a contract for the construction and operation of an amusement train at a public zoo was not a contract for a "public work" nor for the purchase of "materials or supplies," but was more closely akin to a public utility franchise. Thus, similar to the maintenance and repair of an HVAC system, and the construction and operation of an amusement train, the development and implementation of a marketing strategy for advertising on RTA's Transit Fleet does not (and cannot) constitute a "public work." Under the RTA's RFP, the contractor, and not the RTA, will purchase the equipment and then permit the RTA to use the

6

equipment. *(See Exhibit A, Attachment II General Scope of Work).* As a result, the RFP properly does not allude to a "public work" or a purchase by the RTA of "materials and supplies" from the contractor. Under these facts, the Plaintiff's arguments fall flat.

  B.  *The August 6, 2004, RFP is for professional services.*

  The RTA's RFP bears the title of "Professional Services Request for Proposals." This RFP for Professional Services describes numerous services the contractor will provide. The RFP states that the contractor shall provide services including, but not limited to, the following: (1) development and implementation of a marketing strategy for advertising on the RTA's Transit Fleet; (2) development and implementation of a plan to assist with the promotion of rider ship; (3) conduct rider ship market analysis; (4) establish computer terminals containing the aforementioned marketing strategy and analysis and provide RTA with access to same; (5) establish databases containing the aforementioned marketing strategy and analysis and provide RTA with access to same; (6) conduct surveys in developing and implementing a marketing strategy for advertising on the RTA's Transit Fleet; (7) conduct demographic studies in developing and implementing a marketing strategy for advertising on the RTA's Transit Fleet; (8) conduct demonstration projects in developing and implementing a marketing strategy for advertising on the RTA's Transit Fleet; and (9) and install and maintain all equipment necessary to develop and implement a marketing strategy for advertising on the RTA's Transit Fleet.

  In *Rosenbush*, the Louisiana Supreme Court held that a contract to provide services for the City's self-funded worker's compensation program involved administrative services and did not involve "professional services" because the "bulk of the services [were] basically clerical.... They include maintaining claim files, preparing reports, processing claims and making payments on claims. Many of the services will be performed under the direct supervision of or within the rules and

regulations established b the City Attorney's Office. Substantive policy-making decisions will be made by the City Attorney's Office." *Rosenbush*, 653 So.2d at 547. In this matter, however, most (if not all) of the services requested require a special skill, knowledge and/or experience beyond the "clerical" distinction identified in *Rosenbush*. The prosper will be required to develop the entire marketing strategy for advertising on the RTA's Transit Fleet. Plaintiff's attempt to categorize the services as "non" professional services is disingenuous at best.

In fact, in *Daul Insurance Agency, Inc. v. Parish of Jefferson*, 489 So. 2d 364, 367 (La. App. 5th Cir. 1986), the Court concluded that the services provided by an insurance agent, including "identifying risks, recommending ways to reduce risks, designing a tailormade comprehensive insurance program, and performing analyses to minimize costs while maximizing protection" were "professional services" and not mere clerical duties. *Daul Insurance Agency, Inc.*, 489 So.2d at 367. As in *Daul*, the services described in the RTA's RFP consists of the development, implementation and management of significant aspects of the RTA's marketing strategy. Moreover, the prosper will be responsible for serious policy-making decisions. The prosper will be required to develop and implement a marketing strategy for advertising on the RTA's Transit Fleet, develop and implement a plan to assist with the promotion of rider ship, conduct rider ship market analysis, establish computer terminals containing the aforementioned marketing strategy, establish databases containing the aforementioned marketing strategy and analysis, conduct surveys in developing and implementing a marketing strategy for advertising on the RTA's Transit Fleet, conduct demographic studies in developing and implementing a marketing strategy for advertising on the RTA's Transit Fleet, conduct demonstration projects in developing and implementing a marketing strategy for advertising on the RTA's Transit Fleet, and install and maintain all equipment necessary to develop and implement a marketing strategy for advertising on the RTA's Transit Fleet. These responsibilities are neither clerical nor administrative in

nature. The prosper's performance of these responsibilities requires a high level of knowledge, skill and experience. Therefore, given the nature and scope of the contractual responsibilities described in the RTA's RFP, the contract must he interpreted as a contract for professional services.

Because the Contract is one for professional services, and does not fall within the ambit of Louisiana Public Bid Law, Plaintiff has not stated a cognizable claim. Stated another way, Plaintiff cannot maintain an action under 42 U.S.C. § 1983. Plaintiff's claims under 42 U.S.C. § 1983 therefore must be dismissed pursuant to F.R.C. Pr. 12(b)(6).

## II. Plaintiff is not Entitled to the Extraordinary Equitable Remedy of a Preliminary Injunction.

It is well-settled that to invoke the extraordinary equitable remedy of a preliminary injunction, Plaintiff must prove clear violations of Louisiana law. See, e.g., New Orleans Public Service Inc. v. City council, 593 So.2d 891 (La. App. 4th Cir. 1989); Sugar Busters LLC v. Brennan, 17 F.3d 258 (5th Cir. 1999). In this matter,, Plaintiff has not (and cannot) prove through clear and/or convincing evidence that the RTA violated the Louisiana Public Bid Law. In fact, Plaintiff directly participated in the RTA's RFP process. Thus, to now claim that the RTA somehow intentionally violated the Louisiana Public Bid Law such that it warrants the extraordinary remedy of a preliminary injunction is (at best) disingenuous. This Court should give deference to the RTA's administrative process and decision-making. The judicial branch may not ordinarily enjoin a municipal body from acting under the guise of its legislative powers. In short, Plaintiff has failed to sustain its burden of proof; and therefore, Plaintiff is not entitled to the extraordinary remedy of a preliminary injunction. Consequently, the Court must dismiss the Complaint as a matter law.

### III. Plaintiff's complaint is premature as he has failed to exhaust the RTA's administrative remedies.

In the alternative, the Court should dismiss this matter for lack of subject matter jurisdiction. A Motion to Dismiss for lack of subject matter jurisdiction seeks the dismissal of a lawsuit because the court lacks the authority to hear the dispute. *See generally U.S. v. Morton, 467 U.S. 822, 828, 104 S.Ct. 2769, 2773 (1984).*

The Fifth Circuit Court of Appeal held in *Martin K. Eby Construction Company, Inc. v. Dallas Area Rapid Transit, 369 F.3d 464, 472 (5th Cir. 2004)* that a contractor was required to exhaust administrative remedies before filing suit. The Dallas Area Rapid Transit and a successful bidder disputed over the responsibilities in a contract to build a section of light-rail transit line. *Id. at 465.* The bidder failed to exhaust its administrative remedies regarding disputes. *Id. at 469-472.* In reaching its decision, the court concluded that the bidders to the proposal offered by the Dallas Area Rapid Transit agreed to submit to the transit authority's administrative process. *Id. at 471.*

Louisiana courts have generally held that judicial actions taken prior to seeking administrative relief are also premature. *See State of Louisiana through the Department of Social Services v. Baha Towers Limited Partnership, 891 So.2d 18, 2004-0578 (La. App. 4 Cir. 12/1/04); see also Jones v. Crow, 633 So.2d 247, 249 (La. App. 1 Cir. 1993).* A party aggrieved by an action must exhaust all such administrative remedies before being entitled to judicial review. *State of Louisiana through the Department of Social Services, 891 So.2d at 20.*

In the case, *sub judice*, the procedure to protest the award of a contract is clearly provided in the RFP. *(See Exhibit A attached, Section 1.3(b))* Marco was not recommended to be awarded the contract and decided to protest the recommendation of Clear Channel, Inc. However, Marco did not follow the administrative procedures that are set forth. Marco is required to submit its protest within seven (7) days of the award of the contract. Marco did not submit a written protest to the Regional Transit

Authority. *(See Exhibit "B" attached, Affidavit of William Deville)* The actions that Marco has taken are premature. Thus, the Complaint and Application for Preliminary Injunction should be dismissed by this Court.

## CONCLUSION

Plaintiff has not (and cannot) identify a legitimate property interest under Louisiana law. Because the RTA's RFP plainly seeks a contract for professional services, Plaintiff has no legitimate property interest under the Louisiana Public Bid Law. Due to these factual and legal shortcomings, Plaintiff has failed to state a claim upon which relief may be granted. Further, Plaintiff has not demonstrated that the RTA intentionally violated the Louisiana Public Bid Law warranting injunctive relief. As a result, Plaintiff's motion for injunctive relief is riddled with legal errors, and, pursuant to Rule 12 of the Federal Rules of Civil Procedure, the Court must dismiss the Complaint. Alternatively, the Court should dismiss this matter as the Plaintiff has failed to exhaust the RTA's administrative remedies provided for in the RFP.

Respectfully submitted,

**Carter, Haley & McKee, L.L.C.**

_____
N. Sundiata Haley (#26317)
James J. Carter (#26841)
Randy G. McKee (#24552)
Carter, Haley & McKee, L.L.C.
650 Poydras Street, Suite 2015
New Orleans, LA 70130
Telephone:   504.525.6836
Facsimile:    504.525.7289

Attorneys for the Regional Transit Authority

11

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing to all known counsel of record, via facsimile and United States Mail, postage prepaid, on this 1st day of June, 2005.

_____
N. Sundiata Haley

# SEE RECORD FOR EXHIBITS OR ATTACHMENTS NOT SCANNED