UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARCO OUTDOOR ADVERTISING, INC.** | **CIVIL ACTION** |
| **versus** | **NO. 05-1941** |
| **THE REGIONAL TRANSIT AUTHORITY** | **SECTION "C" (2)** |

## ORDER AND REASONS

On July 18, 2005, the Court issued an Order limiting the July 20, 2005 preliminary injunction hearing to the threshold issue of whether Marco can bypass the protest procedures provided in RTA's Request for Proposal ("RFP"). At the hearing, the Court ordered that it would reopen RTA's original Motion to Dismiss (Rec. doc. 8) and that any additional briefing, particularly with respect to the question of whether Marco's suit is premature for failing to have exhausted the administrative remedies provided on the RFP (the "Prematurity argument"), be submitted by Friday, July 22. Having now received and considered all the memorandum, the Court finds that Marco was not required to follow the protest procedures provided for in the RFP prior to filing suit, that the Court does have subject matter jurisdiction in this matter, and that the pleadings are sufficient to state a claim that the contract at issue is subject to the Louisiana Public Bid laws.

I. Protest Procedures

RTA and Intervenor Clear Channel assert the suit should be dismissed as premature because Marco has not followed the protest procedures contained in the RFP. The protest procedures state that:

> Any person who is aggrieved in connection with the solicitation or award of a contract **may** protest to the Director of Procurement / TMSEL. Protests shall be submitted in writing specifically identifying the area of protest and containing any support data, test results, or other pertinent information substantiating the appeal. A protest with respect to a solicitation must be submitted in writing to the RTA at least three calender days prior to the proposal receipt deadline. A protest with regard to the award of a contract shall he submitted, in writing, within seven calendar days after award of the contract.
> Prior to any action in court, the Director of Procurement/TMSEL shall have the authority to settle or resolve a protest from an aggrieved person concerning the solicitation or award of a contract.
>
> If the protest is not resolved, the Director or Procurement/TMSEL os his designee shall within thirty calendar days of protest issue a decision in writing. The decision shall:
>     1. State the reasons for the action taken; and
>     2. Inform the protestor of his/her right to administrative and judicial review.
>                   ...
> The General Manager/TMSEL shall have the authority to review and determine any appeal by an aggrieved person form a determination by the Director of Procurement/TMSEL or his designee.
>
> The aggrieved person must file an appeal within five calendar days of receipt of a decision form the Director of Procurement/TMSEL.
>
> On any appeal of the decision of the Director of Procurement/TMSEL, the General Manager/TMSEL shall decide within thirty calendar days whether the solicitation or award was made in accordance with the construction, statutes, regulations, and the terms and conditions of the solicitation. Any prior determination by the Director of Procurement/TMSEL of his designee shall not be final or conclusive.
>                   ...
> The decision of the General Manager/TMSEL shall be final and conclusive unless:
>     1. The decision is fraudulent; or

2

    2. The person adversely affected by the decision has timely filed an appeal
to the FTA after having exhausted the local protest procedures stated above.

RFP. Section 1.3(b). (emphasis added). Marco counters that the protest procedures are not mandatory, and that even if they were, they would be inadequate and futile.

  In *Millette Enterprises, Inc. v. State of Louisiana*, the Louisiana First Circuit Court of Appeal considered whether the language of the protest procedures contained in La. R.S. 39:1671 required administrative remedies to be exhausted prior to filing suit in court. 427 So.2d 6, 10 (1982). The court found that the language, "any person ... aggrieved ... *may* protest to the chief procurement officer," (emphasis original) was permissive rather than mandatory. *Id.*; La. R.S. 39:1671. "There is no indication in the statutory scheme that the legislature intended the administrative remedy as a prerequisite to a judicial resolution of the controversy." *Id.* Given that the RTA's RFP contains virtually the same permissive language, the Court finds that this conclusion in *Millette* is equally applicable here. While Marco had the option of following the RFP's protest procedures, those procedures do not constitute an aggrieved party's only recourse.

  RTA and Clear Channel argue that Marco was obligated to exhaust administrative remedies pursuant to the jurisprudential exhaustion doctrine, citing *Martin K. Eby Construction Company, Inc. v. Dallas Rapid Transit* as well as *Taylor v. United States Treasury Department* as support.[1] 369 F.3d 464, 472 (5th Cir. 2004); 127 F.3d 470 (5th Cir. 1997). In *Eby*, the United States Fifth Circuit held that the bidders on a contract proposal offered by the Dallas Area Rapid Transit were

---

[1] The jurisprudential exhaustion doctrine is a "long settled rule of judicial administration [which mandates] that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938). The doctrine applies in the absence of a statutory requirement for exhaustion of remedies. *Taylor*, 127 F.3d at 475.

required to exhaust administrative remedies before seeking judicial review. However, *Eby* is distinguishable because it involved a bid solicitation with an explicit provision that any bidder who responds to the solicitation agrees to exhaust administrative remedies under DART's procurement regulations or the disputes clause of any resulting contract before seeking judicial relief of any type. *Id.* RTA's RFP contained no such provision, nor has Marco entered into any contract with RTA that would limit its remedies.

Similarly, *Taylor* is distinguishable. *Taylor* involved an individual who brought suit under the Privacy Act, 5 U.S.C. § 552a and the Freedom of Information Act, 5 U.S.C. § 552, after the IRS rejected his request for records. The IRS sought to dismiss on the basis that the court lacked subject matter jurisdiction over the Privacy Act claim because the plaintiff had failed to exhaust his administrative remedies. *Id.* at 472. As a technical matter, the court found the plaintiff had failed to even bring a suitable request, and thus the IRS could not be said to have ever denied a request. *Id.*, at 474. The Fifth Circuit found that the Privacy Act did not expressly require exhaustion of particular administrative remedies, and therefore plaintiff's failure to exhaust did not constitute a jurisdictional bar. *Id.* at 476. However, the court went on to find that the plaintiff had failed to state a claim upon which relief can be granted because he was required to exhaust administrative remedies pursuant to the jurisprudential exhaustion doctrine. In other words, rather than bringing a suit to gain access to the records, the plaintiff should have first followed the "prescribed administrative remedy" of making a proper request pursuant to § 552a(d)(1). *Myers*, *supra*. By contrast, Marco was required neither by statute nor, the Court finds, by the terms of the RFP to pursue an administrative remedy.

The Court makes no ruling on whether the administrative remedies provided for in the RFP,

if they were mandated, would fall under an exception to the jurisprudential exhaustion requirement, as Marco argues.[2]

*Ndanyi v. Rent-A-Center, Inc*. is distinguishable from the facts of the instant case as well. 2004 WL 3254516 (E.D. La. 2004). *Ndanyi* also held that judicial remedies were precluded, but unlike the instant matter, it involved a binding arbitration agreement.

*Comeaux v. The Tangipahoa Parish School Board* is also distinguishable. In *Comeaux*, this Court dismissed plaintiff's complaint for lack of subject matter jurisdiction due to failure to exhaust administrative remedies. 2001 WL 175230 (E.D. La. 2000). However, that case was brought under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1412 *et seq*, which provides for administrative actions for parents who have complaints about actions taken by the school board. The United States Fifth Circuit Court of Appeal has held that "[u]nder the IDEA, parties must exhaust administrative remedies before filing suit." *Gardner v. School Bd. of Caddo Parish*, 958 F.2d 108, 110 (5th Cir. 1992). As the instant matter does not involve the IDEA, neither *Comeaux* nor *Gardner* are relevant.

RTA and Clear Channel cite several additional cases in support of the proposition that "Louisiana court have generally held that judicial actions taken prior to seeking administrative relief is ... premature." (RTA's July 22 Memorandum, p. 11); *See State of Louisiana through the Department of Social Services v. Baha Towers Limited Partnership*, 891 So.2d 18, 2004-0578 (La.

---

[2] Exceptions to the jurisprudential exhaustion requirement are situations where 1) the unexhausted administrative remedy would plainly be inadequate; 2) the claimant has made a constitutional challenge that would remain standing after exhaustion of the administrative remedy; 3) the claimant contends that the administrative process itself is unlawful; and 4) exhaustion of administrative remedies would be futile because the administrative agency will clearly reject the claim. *Taylor*, 127 F.2d at 477.

App. 4 Cir. 12/01/04); *See also Jones v. Crow*, 633 So.2d 247, 249, 92-2032 (La. App. 1 Cir. 11/24/93); *See also Bounds v. State Department of Highways*, 333 So.2d 714 (La. App. 2 Cir. 5/24/76).   *Baha Towers* was a suit brought under the Louisiana Procurement Code, La. R.S. 39:1551 *et seq*.  891 So.2d 18, 2004-0578 (La. App. 4 Cir. 12/01/04).  *Crow* was brought under the Louisiana Medical Malpractice Act, La. R.S. 40:1299.41 *et seq*.  633 So.2d 247, 249, 92-2032 (La. App. 1 Cir. 11/24/93).  *Bounds* was brought under the Relocation Assistance Act, La. R.S. 38:3101–3109.  333 So.2d at 714.  The courts in these cases found that each of these respective statutes require exhaustion of administrative remedies prior to bringing suit.  None of these statutes, however, is applicable to the instant matter.

RTA and Clear Channel also assert that Marco's suit is premature because it does not follow the requirements of the Louisiana Public Bid Law, La. R.S. 38:2220.3, in the event that the public bid law applies.[3]  La. R.S. 38:2220.3 states that prior to the initiation of the civil action, the complainant shall inform the attorney general of the alleged violation and all direct information he possesses regarding the alleged violation of the Public Bid Law.  If the attorney general does not initiate a civil action, only then may the complainant initiate a civil action.  Id.

The Court finds that 38:2220.3, which is part of a 1999 amendment to the Public Bid Law, 38:2220, was intended to apply to whistleblowers, not the interested party to the contract.[4]  La.R.S. 38:2220.3 must be read in the context of 38:2220.1, which explicitly states that "the provision of

---

[3] RTA and Clear Channel assert that the Louisiana Public Bid Law in fact does *not* apply. The Court will address this issue in the subsequent section of this Opinion.

[4] Section 38:2220 applies to any "interested party," while Sections 38:2220.1-.4 apply to "any person, association, corporation, or other business entity with direct knowledge of a violation," whether interested or not.

these Sections shall not be construed to eliminate or reduce and causes of action or other forms of relief provided by existing law, including but not limited to suits authorized by R.S. 38:2220." Section 38:2220 authorizes any interested parties to bring suit in the district court to seek injunctive relief. As such, the Court finds that R.S. 38:2220.3 does not apply, nor does it prevent Marco from seeking injunctive relief before the Court.

### II. The Louisiana Public Bid Law

RTA and Clear Channel assert that the Louisiana Public Bid law does not apply to the contract in question, which not only defeats Marco's § 1983 claim on the merits, but simultaneously renders the Court without subject matter jurisdiction to decide the question.

It is clear that the Court has jurisdiction pursuant to the rule of *Bell v. Hood.* 327 U.S. 678, 682 (1946). If Macro is correct that the Public Bid Law applies, then it has a protected interest in the contract that allows it to bring a § 1983 claim and the Court has federal question jurisdiction. If Marco is incorrect, then the constitutional claim fails, and also federal question jurisdiction is thwarted. *See Worldwide Parking v. New Orleans City*, 123 Fed. Appx. 606, 608 (5th Cir. 2005). Consequently, "'the challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action,' – in other words, where factual issues determinative of jurisdiction are intertwined with or identical to factual issues determinative of the merits. *Id.*, *citing Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981). In such a situation, the rule of *Bell v. Hood* requires the district court to assume jurisdiction and decide the (issue) on the merits. *Worldwide Parking*, 123 Fed. Appx. at 609.

The Court has previously indicated that, based on the pleadings which include a copy of the

7

RTA proposal, the contract at issue is subject to the Louisiana Public Bid Law. (Rec. doc. 25, p. 3). The Court now clarifies that the contract *may* be subject to the Public Bid Law because the pleadings indicate that the contract is for public works. However, the presentation of the facts at trial may indicate that the bulk of the contract is for services rather than public works, in which case the Public Bid Law would not apply. *Worldwide Parking*, 123 Fed. Appx. at 608 ("The Public Bid law does not apply to services"). This determination must await factual development on the merits. In the meantime, the Court finds that the pleadings sufficiently state a claim under the Public Bid Law.

The Court finds that the pleadings sufficiently claim that the contract is, at least in part, for the construction of public works. The Louisiana Public Bid Law states in pertinent part:

> Any purchase of materials or supplies, or any contract entered into for the construction of public works, contrary to the provisions of this Part shall be null and void.

La. R.S. 38:2220(A). The RTA's enabling legislation has applied the public bid laws to the RTA. It states that:

> Section 1660. Competitive bidding on contracts, etc.
>
> > By way of illustration and not specification, all purchases, acquisitions, dispositions, contracts, leases, bond sales, and like actions of the authority referred to in the provisions of this Chapter shall be subject to the public bid laws of this state.

La. R.S. 48:1660. Moreover, the Eastern District of Louisiana has previously held that RTA is subject to the public bid law as a result of this Section. *See Nolan Contracting, Inc. v. Regional Transit Authority*, 651 F.Supp. 23 (E.D. La. 1986). The Court acknowledges that it may have previously indicated that it interprets Section 1660 to mean that the enabling legislation has broadened the scope of the Louisiana Public Bid Law to almost all RTA contracts, purchases, leases,

etc. (Rec. doc. 25, p. 3). The Court now clarifies that it regards Section 1660 to mean that all of RTA's contracts, purchases, leases, etc. are subject to the public bid laws, *including the restrictions and limitations, both statutory and court-made, of those laws*. In other words, the application of the Louisiana Public Bid Law to the RTA contract in question is restricted by the limitations of that law and the relevant jurisprudence. Section 1660 refers to the "public bid *laws*," not just the "public bid." "Laws" encompasses both the statutory and jurisprudential exceptions.

As previously noted, the Louisiana Public Bid Law is limited to any purchase of supplies or any public work. La. R.S. 38:2211(A)(12) defines "public work" as "the erection, construction, alteration, improvement, or repair of *any public facility* or immovable property owned, used, or leased by a public entity" (emphasis added). The Louisiana Supreme Court has defined "public work" as "a building, *physical improvement*, or other fixed construction." *Wallace Stevens, Inc., v. Lafourche Parish Hospital District*, 323 So.2d 794, 796 (La. 1975) (emphasis added).

The Court regards the RTA contract as a public works contract, to some extent at least, within the meaning of La. R.S. 38:2211(A)(12) and *Wallace Stevens*. The RTA contract calls for the contractor to "install and maintain all equipment necessary to market advertising on RTA's transit fleet," to "construct, maintain and market advertising on approximately 212 shelters at various locations," and to "install, maintain and market advertising on approximately 100 transit benches." RFP Attachment II – Scope of Work. The Court finds that the RTA's busses, streetcars, shelters, and benches are all "public facilities" under La. R.S. 38:2211(A)(12), and the contract calls for their "alteration" or "improvement" by installing and maintaining advertising, which under Wallace Stevens is likewise a "physical improvement."

RTA and Clear Channel claim that "public works" must be immovable property.

"Jurisprudence has defined (public work) as involving an immovable." La. Atty. Gen. Op. 82-1053 (November 1, 1982); see also La. Atty. Gen. Op. 97-269 (July 9, 1997). Because busses and streetcars are movables, they argue, the contract cannot be for public work. The Court finds that the Attorney General's opinion 82-1053 interprets La. R.S. 38:2211(A)(12) and *Wallace Stevens* too narrowly.[5] Moreover, even if public works did include immovables only, it would certainly cover the aspects of the contract pertaining to RTA shelters and benches. Yet the individuals who use those public facilities are the same who use the busses and streetcars. The Court finds it illogical to conclude that an RTA contract pertaining to its benches and shelters would fall under the Public Bid Law, but that the same contract pertaining to busses and streetcars would not. The purpose of the Public Bid Law is to protect the public treasury from favoritism in awards and exorbitant costs. *Wallace Stevens*, 323 So.2d at 795. Those concerns are the same regardless of whether the property is a public facility that is immovable or, in this case, a public facility on wheels. The Court should adopt the interpretation that best conforms to the purpose of the law. Accordingly, the argument that contracts for public works can only involve immovable property is unpersuasive.

III. Revenue Contract

RTA argues that the contract, as a revenue contract, was awarded utilizing a selection procedure within the discretion of the grantee, RTA, rather than the Public Bid Law procedure. The Federal Transit Administration ("FTA"), which provides funds to RTA, has issued circular C 4220.1E for the purpose of setting forth the requirements a grantee must adhere to in awarding third

---

[5] Louisiana Attorney General opinions are merely advisory and not binding, though regarded by Louisiana courts as persuasive. *Holley v. Plum Creek Timber, Co., Inc.*, 877 So.2d 284, 291 (La. App. 2 Cir. 6/23/04).

party contract, such as the contract sought in RTA's RFP. The circular provides that grantees like RTA must follow applicable state and local laws in their procurement procedures, and in lieu of any applicable laws will apply federal contract principles. C 4220.1E(7). RTA asserts that state and local laws, including the Louisiana Public Bid Law, are not applicable, and thus RTA is permitted to use its own discretionary procedure for awarding contracts. RTA cites Louisiana Attorney General Opinion number 97-269 as support. ("There are no state statutes which govern the award of contracts by public transit operators for the carrying of advertising on transit vehicles. Therefore, such contracts may be negotiated by the transit operator") 1997 WL 526131 (July 9, 1997). RTA also cites various cases from states other than Louisiana. *See Arnold v. California Expos. and State Fair*, 125 Cal. App. 498 (Ca. App. 3d Cir. 2004); *See also Pair-a-Dice Acquisition Partners, Inc., v. Board of Trustees of the Galveston Wharves,* 185 F.Supp. 703, 705 (S.D. Tex. 2002).

      RTA's argument is base in the premise that the Louisiana Public Bid Law does not apply. As noted above, the Public Bid Law may very well be applicable here because the contract involves the construction of public works. Should the Public Bid Law be found to apply, RTA would be obliged to follow the procedures set forth in the Public Bid law rather than its own discretionary procedures. Accordingly, the Court cannot dismiss Marco's claim until RTA's premise is evaluated in light of the facts. Furthermore, the Court notes that the cases RTA cites may indicate that revenue generating contracts are not applicable to public bid laws, but neither of the cases involve the Louisiana Public Bid law, nor is the Court aware of any precedent holding that the Louisiana Public Bid Law cannot apply to revenue generating contracts.

IV. Conclusion

In conclusion, the Court finds that Marco's suit is not premature; Marco was not required to pursue the protest procedures provided for in the RFP before bringing the instant suit. In addition, the Court has subject matter jurisdiction to determine whether the Public Bid Law applies, and finds that a complete presentation of the facts is necessary to determine whether the bulk of the contract is for public works, in which case the Public Bid Law would apply, or services, in which case it would not apply.

Accordingly.

**IT IS ORDERED** that RTA's Motion to Dismiss (Rec. doc. 8) is **DENIED**.

**IT IS FURTHER ORDERED** that a trial on the merits shall commence on Wednesday, August 17, 2005 at 1:30 p.m..

**IT IS FURTHER ORDERED** that RTA's Motion for Summary Judgment be set for hearing at that time, August 17, 2005 at 1:30 p.m., to be heard in conjunction with the trial.

New Orleans, Louisiana, this 26th day of July, 2005.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE